**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 25 2013, 9:10 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

Attorney for Father, S.C.
**JOANN M. PRICE**
Merrillville, Indiana

Attorney for Mother, A.R.
**DEIDRE L. MONROE**
Gary, Indiana

ATTORNEYS FOR APPELLEES:

Attorneys for DCS
**EUGENE M. VELAZCO, JR.**
DCS, Lake County Office
Gary, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

Attorney for Lake County C.A.S.A.
**DONALD W. WRUCK**
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL-CHILD RELATIONSHIP OF D.C, Minor Child, | ) ) ) |
| | ) |
| A.R., Mother, and S.C., Father, | ) |
| | ) |
| Appellants-Respondents, | ) |
| | ) |
| vs. | ) No. 45A03-1204-JT-172 |
| | ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) |
| | ) |
| Appellee-Petitioner, and | ) |
| | ) |
| LAKE COUNTY C.A.S.A., | ) |
| | ) |
| Co-Appellee. | ) |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Mary Beth Bonaventura, Judge
Cause No. 45D06-1108-JT-190

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

A.R. (Mother) and S.C. (Father) (collectively "Parents") appeal the termination of their parental rights to their child, D.C. (Child). Parents contend the evidence was insufficient to support, by clear and convincing evidence, the termination of their rights to Child. They allege there was insufficient evidence to prove the conditions resulting in Child's removal had not been remedied and there was insufficient evidence presented that termination was in the best interest of Child. We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 1, 2010, the Indiana Department of Child Services (DCS) was informed that numerous and ongoing incidents of domestic violence were occurring between Mother and Father while Child was present. On October 28, Child was removed from Parents' home based on reports of Father's continued domestic violence and drug abuse. On November 1, DCS filed a petition alleging Child was in need of services (CHINS Petition).

The next day, the juvenile court held an Initial/Detention Hearing where Mother appeared and denied in part but admitted the material allegations in the CHINS Petition. The juvenile court adjudicated Child to be a CHINS as to Mother[1] and continued Child's placement with his maternal grandmother (Grandmother). Mother and Father were ordered

---

[1] Father did not appear at the hearing because he was in jail.

to participate in services and Father was to have no contact or visitation with Child until he was released from jail and had received treatment.

On December 3, 2010, the juvenile court held a CHINS dispositional hearing where Mother and Father were ordered to participate in services and the court entered its dispositional order. On March 18, 2011, Mother and Father appeared at a second CHINS hearing, where Father fully admitted the material allegations, and the court found Child to be a CHINS as to Father and ordered Father, among other things, to participate in services.

On July 15, 2011, a Permanency Plan Review Hearing was held, at which the juvenile court adopted a permanency plan that called for termination of parental rights and adoption. DCS filed its Termination of Parental Rights Petition on August 19, 2011, and the trial court authorized the formal filing, which was done on August 22, 2011.

On March 22, 2012, the juvenile court held an evidentiary hearing on termination. The juvenile court terminated Mother's and Father's parental rights on March 26, 2012, in an order that contained the following:

> There is a reasonable probability that the conditions resulting in the removal of the child from his parents' home will not be remedied in that: The child became a Ward of the Department of Child Services when the agency received a referral from the police department after multiple reports of domestic violence in the home of the parents with the child present. The Mother and [F]ather were involved in a violent relationship. The Department of Child Services intervened and removed the child in October 2010 after the parents had an altercation where the child was present and nearly injured. The Father also had a history of drug usage.
> The parents were offered services pursuant to a case plan which included domestic violence counseling, psychological evaluation, individual counseling, supervised visitations, home based casework services, drug and alcohol evaluation, random drug screens, parenting classes, psychiatric evaluation and parenting assessments.

3

Mother continues to have a relationship with [F]ather even with a No Contact Order in place. Mother obtained a restraining order in February 2011, but then had it lifted a short while later. The [M]other was observed with [F]ather in March 2011 and Mother appeared at a court hearing in October 2011 badly battered. Mother indicated that she got into an altercation with [F]ather. After extensive counseling, [M]other cannot stay away from father even though the violence continues. Mother was observed on [a] number of occasions with multiple cuts and bruises.

Mother completed the psychiatric evaluation and [M]other was diagnosed as bipolar. Mother was placed on medication but would not remain medication compliant. Mother attempted suicide in April 2011. Mother tested positive for marijuana and opiates on a drug screen in November 2011. Mother does not have stable housing and is living with Father's mother. Mother has relocated on eight different occasions from October 2010 through March of 2012. Mother has lived with numerous friends but the placement always failed after [M]other would get into a violent altercation with her friends. Mother also has a battery charge of an eight year old child of her roommate's pending. Mother does not have employment and does not have any income. Mother does not comprehend the serious impact that her violent relationship with [F]ather has on the children.

Mother was offered home based casework services to assist mother in obtaining housing and employment. Mother was offered community resources and never obtained her own housing or employment. Mother never made any progress in becoming independent.

Mother was offered supervised visitations with the child twice a week. Mother has missed multiple visits with her child. Mother was approximately missing one visit a week. Mother did not visit with her child at all during the month of December 2011. Mother was very sporadic with her visitations and very inconsistent.

Father has a serious and long criminal history. Father has been incarcerated on a number of occasions dating back to 1993. Presently the [F]ather is incarcerated at the Lake County Jail on a number of charges including, [sic] Battery, Burglary, Theft and Stalking. While this case has been ongoing, [F]ather has only been out of jail for approximately two months. Father has participated in services while in jail, but when [F]ather is out of jail, he is very difficult to reach and participated sporadically. Father has a long history of drug abuse, dating back to age 17. Father is currently facing a number of years in prison.

Mother has three children, two of which are [F]ather's, none of which are in their care or custody. All the children are in their maternal grandmother's care. Grandmother has adopted one of the children and is in the process of adopting the other.

Neither parent is providing any emotional [or] financial support for the child. Neither parent has completed any case plan for reunification. Neither parent is in a position to properly parent this child. The child is in relative placement with his siblings and is bonded and thriving. The child has been in placement since 2010 at age 2 1/2 months, and has not been returned to parental care.

There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child in that: for the reasons stated above. Additionally, the child deserves a loving, caring, safe, stable and drug free home.

It is in the best interest of the child and his health, welfare and future that the parent-child relationship between the child and his parents be forever fully and absolutely terminated.

The Lake County Division of Family and Children has a satisfactory plan for the care and treatment of the child which is Adoption by the grandmother . . . .

(Mother's App. at 1-3.)

## DISCUSSION AND DECISION

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

We review termination of parental rights with great deference. *Id.* We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct.

5

App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *L.S.*, 717 N.E.2d at 208.

To terminate a parent-child relationship, the State is required to allege and prove, in pertinent part:

> (B) that one (1) of the following is true:
>     (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>     (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>     (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must prove the allegations by clear and convincing

evidence. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, the court must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

Parents challenge the sufficiency of the evidence supporting the trial court's findings under subsections (B)[2] and (C) of Ind. Code § 31-35-2-4(b)(2). We address each in turn.

1.      Failure to Remedy Conditions

The trial court concluded Mother and Father failed to remedy the conditions that resulted in Child's removal. *See* Ind. Code § 31-35-2-4(b)(2)(B)(i). In making such a determination, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.,* 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied.* It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children,* 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied.* The trial court may also properly consider, as evidence of whether conditions will be remedied, the services offered to the parent by DCS, and the parent's response to those services. *Id.* A trial

---

[2] Because our legislature wrote Ind. Code § 31-35-2-4(b)(2)(B) in the disjunctive, a trial court needs to find only one of the three requirements established by clear and convincing evidence before terminating parental rights. *See In re L.S.,* 717 N.E.2d at 209. The court found the conditions that resulted in D.C.'s removal would not be remedied and the continuation of the parent-child relationship was a threat to D.C.'s well-being, and we may affirm if the evidence supports one of them.

7

court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.,* 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

Here, Father had a history of drug abuse and incarcerations. After Child was taken out of his and Mother's custody, Father's drug use continued. Mother confirmed that Father was an active drug user. At the time of the termination hearing, Father was facing charges that could result in him spending up to five more years in jail, such that he would not be physically available to care for Child.

Mother also continued to use illegal drugs, as she tested positive for marijuana and opiates while the CHINS and termination cases were pending. She did not, on the other hand, remain compliant with the medications she was prescribed for her bipolar disorder. Her failure to take her medications resulted in Mother experiencing severe mood swings, and in April of 2011, Mother attempted to commit suicide by taking Zoloft and Tylenol because she was stressed out and tired of the whole situation.

Mother and Father had an abusive relationship, and the abuse continued during the pendency of the CHINS matter. On October 14, 2011, Mother appeared at a review hearing in the CHINS case with the left side of her face bruised and battered. She informed the family case manager that Father had beaten her. Mother admitted that she was addicted to Father, and she seemed to put her relationships with men ahead of the interests of the Child.

Both Mother and Father were offered services but never successfully completed any of them. After Child was removed from her care, Mother moved at least five times and was

8

never able to secure employment or independent housing.

This evidence supports the court's findings and its conclusion that the circumstances that led to Child's removal would not be remedied.

2.    Best Interests of the Child

Termination may not be granted unless it is in the best interests of the child. Ind. Code § 31-35-2-4(b)(2)(C). In determining a child's best interests, a juvenile court is required to look beyond the factors identified by DCS and to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children,* 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the juvenile court must subordinate the interests of the parent to those of the child. *Id.* Recommendations from the case manager and child advocate that it would be in the child's best interests to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re M.M.,* 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Child was placed with his Grandmother, who has custody of Mother's other two children. Grandmother is in the process of adopting the other two children and is willing to adopt Child. Child is doing well in Grandmother's care, where he has bonded with her and with his siblings, she is able to meet all of his needs, and he is meeting all of his developmental milestones. The Family Case Manager felt that termination of parental rights and adoption was in Child's best interests.

Based on the evidence, the trial court did not err when it found termination of

9

Mother's and Father's rights was in D.C.'s best interests. *See McBride,* 798 N.E.2d at 192-93 (child's need for permanency cannot be delayed by possibility parent will eventually be able to care for child).

After reviewing all of the evidence presented and the court's findings and conclusions, we cannot say the juvenile court erred in terminating Mother and Father's parental rights. Accordingly, we affirm.

Affirmed.

ROBB, C. J., and PYLE, J., concur.